NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

Michael Rodger Brown,

        Debtor.
-------------------------------------------------------------------x
Jennifer Brown,

        Plaintiff,

 v.

Michael Rodger Brown,

        Defendant.
-------------------------------------------------------------------x

Chapter 7

Case No. 18-10617-JLG

Adv. Pro. No. 18-01553-JLG

# MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

**APPEARANCES**:

Law Offices of Kenneth L. Baum LLC
167 Main Street
Hackensack, New Jersey 07601
By: Kenneth L. Baum, Esq.

*Counsel for the Defendant*


Fischer Porter & Thomas, P.C.
560 Sylvan Avenue, Ste. 3061
Englewood Cliffs, NJ 07632
By: Aaron E. Albert, Esq.

*Counsel for the Plaintiff*

HON. JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE:

  Michael Roger Brown (the "Debtor") is a chapter 7 debtor herein. He and his current wife, Jennifer Brown ("Jennifer"), are parties to an action for divorce and ancillary relief that has been pending in the New York State Supreme Court, New York County (the "State Court") since 2013 (the "Matrimonial Action"). As of the Petition Date (defined below), Jennifer held two claims against the Debtor, both of which arise out of the marital relationship. One is a claim for unpaid State Court ordered maintenance and support obligations that Jennifer says totals $216,000 (the "Maintenance Claim"); the other is a contingent, unsecured claim in the sum of $6,375,000 for her share of the equitable distribution of their marital property that she is pursuing in the Matrimonial Action (the "Equitable Distribution Claim"). By order dated April 4, 2018, the Court granted Jennifer's motion for stay relief to permit all matters at issue in the Matrimonial Action to be litigated to conclusion. *See* Case No. 18-10617, ECF No. 17 (the "Stay Order").

  Jennifer timely filed a Complaint for Determination of Dischargeability and Objecting to Debtor's Discharge Pursuant to Sections 523 and 727 of the Bankruptcy Code (the "Complaint") in this Court. *See* AP No. 18-01553, ECF No. 1. In it she seeks a judgment: (i) denying the Debtor his discharge in bankruptcy pursuant to section 727 of the Bankruptcy Code (Count 1); and (ii) denying the discharge of the Maintenance Claim pursuant to section 523(a)(5) of the Bankruptcy Code (Count 2). Since then, the Debtor paid off and fully satisfied the Maintenance Claim. Before the Court is the Debtor's motion to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[1] *See*

---

[1] Rule 12(b)(1) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

1

Defendant's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) [AP No. 18-01553, ECF No. 5] (the "Motion").[2] Jennifer opposes the Motion. *See* Jennifer Brown's Opposition to the Debtor's Motion to Dismiss Her Adversary Proceeding [ECF No. 9] (the "Opposition").

For the reasons stated herein, the Motion is GRANTED.

<u>Jurisdiction</u>

The Court has jurisdiction over this Adversary Proceeding and the Motion pursuant to sections 157 and 1334 of title 28 of the United States Code, and the standing order of reference for bankruptcy cases and related proceedings for the United States District Court for the Southern District of New York. *See* Amended Standing Order of Reference, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

<u>Background</u>

The Debtor commenced his voluntary chapter 7 case on March 5, 2018 (the "Petition Date"). At that time, the Matrimonial Action had been pending in State Court since March 26, 2013. *See* Debtor's Decl. ¶ 2. In that action, in addition to seeking the dissolution of their marriage, Jennifer and the Debtor are asking the State Court to determine their rights, and those of their minor children, to support payments, custody, and the equitable distribution of the marital assets. As of the Petition Date, there were disputes between the Debtor and Jennifer arising out of the Debtor's alleged failure to make court ordered maintenance and support

---

[2] In support of the Motion, the Debtor filed the Declaration of Michael Brown in Support of Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) ("Debtor's Declaration"). The Debtor also filed a Memorandum in Further Support of Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) [ECF No. 10] (the "Reply") in response to the Plaintiff's Opposition.

payments, and his alleged failure to account for $12,750,000, which Jennifer says is part of the marital estate. Jennifer's asserted equitable right to a share of those allegedly missing funds is the basis of the $6,375,000 contingent, unliquidated unsecured Equitable Distribution Claim that Jennifer timely filed against the Debtor herein. *See* Proof of Claim, No. 6-1 (stating that the basis of the claim is: "Expert in an action for divorce were unable to trace $12.75 million in marital funds subject to equitable distributio[n]."). By order dated April 4, 2018, the Court lifted the automatic stay to permit the Matrimonial Action to be litigated to conclusion, provided however, that "any distribution of property of the bankruptcy estate and any determination of title to assets of the bankruptcy estate, whether for collection of support, equitable distribution or otherwise, shall be subject to this Court's review and approval[.]" *See* Stay Order at 2.

In Count 1 of the Complaint, Jennifer challenges the Debtor's right to a discharge in bankruptcy. In his chapter 7 petition, the Debtor attests that he holds assets totaling $1,832,000.81. *See* Schedule A/B [Case No. 18-10617, ECF No. 1]. Jennifer disputes that contention. She says that the Debtor has intentionally and fraudulently understated the value of his assets, and, for that reason, she contends that he should be denied his discharge in bankruptcy pursuant to multiple provisions of section 727(a) of the Bankruptcy Code. *See* Complaint ¶¶ 37-39. As support, Jennifer says that in 2006, the Debtor and his family members held controlling interests in an entity known as Allied Office Products ("AOP"), and that in May 2006, Office Depot Inc. and OCS Acquisition Corp. acquired AOP for the approximate sum of $152,000,000, pursuant to a stock purchase agreement. *See id.* ¶¶ 25-26. She says that at the closing of that transaction, the Debtor received substantial payments on account of his interests in AOP (*see id.* ¶¶ 27-30), and that based upon an analysis of the Debtor's books and records by Financial Research Associates ("FRA"), a forensic accounting firm she retained in the Matrimonial Action,

3

the Debtor has failed to account for $12,750,000 of funds that he received during the period of 2006-2016. *See id.* ¶¶ 31-35. She alleges that "FRA's research and conclusions show that the Debtor's claim that his assets amount only to $1,832,000.81 is false and in violation of 11 U.S.C. § 727(a)(2)(A), 11 U.S.C. § 727(a)(3), 11 U.S.C. § 727(a)(4), and/or 11 U.S.C. § 727(a)(5)." *Id.* ¶ 36. As additional support for that claim, Jennifer asserts that the "Debtor has admitted to traveling to the Bahamas and the Cayman islands [*sic*] after the sale of AOP and before the Matrimonial Action was commenced." *Id.*

In Count 2 of the Complaint, Jennifer challenges the dischargeability of the Maintenance Claim. *See* Complaint ¶¶ 40-43. She alleges that the Debtor violated the State Court's *Pendente Lite Order*, dated September 4, 2013, by failing to make monthly temporary maintenance and child support payments totaling $216,000 (*see id.* ¶¶ 14-22), and that such indebtedness constitutes a "domestic support obligation," as defined by section 101(14A) of the Bankruptcy Code. *See id.* ¶ 42. Thus, she contends that "[t]he full amount of $216,000 owed by Debtor to Plaintiff . . . is non-dischargeable because it is a debt for a domestic support obligation within the meaning of Bankruptcy Code §§ 101(14A) and 523(a)(5)." *Id.* ¶ 43.

The Debtor argues that both Counts should be dismissed for lack of subject matter jurisdiction.

## Discussion

Pursuant to Rule 12(b)(1), a court can dismiss a complaint, or counts thereof, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Under that rule, dismissal of a complaint is proper when the court lacks statutory or constitutional power to adjudicate it. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When ruling on a Rule 12(b)(1) motion, "[a] court must accept the material factual allegations in the complaint as true, but need

4

not draw inferences favorable to the plaintiff." *Penthouse Media Grp. v. Guccione (In re General Media, Inc.)*, 335 B.R. 66, 71-72 (Bankr. S.D.N.Y. 2005) (citations omitted). Further, the plaintiff carries the burden of establishing that the court has subject matter jurisdiction to adjudicate his claims. *See Smith v. Masterson,* No. 05 Civ. 2897, 2006 WL 2883009, at *6 (S.D.N.Y. Sept. 29, 2006) ("The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction.") (citations omitted). As discussed below, Jennifer has failed to meet that burden in this case.

Pursuant to Article III § 2 of the Constitution, the "power" of the federal courts extends only to "cases" and "controversies." *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) ("Article III, § 2, of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies[.]") (internal quotations omitted); *see also The Bank of New York v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 432, 436 (Bankr. S.D.N.Y. 2004) ("The United States Constitution limits federal courts in their jurisdiction to actual 'cases' or 'controversies.'" (citing U.S. Const. art. III, § 2, cl. 1)). The term "justiciability" is the term "employed to give expression to the . . . limitation[s] placed upon federal courts by the case-and-controversy doctrine." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Among other things, it embodies the doctrines of standing, ripeness and mootness. *See id.* at 94-97; *see also DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1858 (2006) ("[D]octrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does."). It is settled that "[t]he limits Article III imposes on federal jurisdiction apply equally to bankruptcy courts." *Day v. Klinger (In re Klinger)*, 301

5

B.R. 519, 523 (Bankr. N.D. Ill. 2003); *see also Giambi v. Beck (In re ContiFinancial Corp.)*, 336 Fed. Appx. 29, 30 (2d Cir. 2009).

      Consideration of the doctrines of standing and mootness are central to the resolution of the Motion. Standing to sue "is a doctrine rooted in the traditional understanding of a case or controversy. . . [and serves to] ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*citing Raines v. Byrd*, 521 U.S. 811, 818 (1997)). Its focus is on the status of the parties at the outset of the litigation. Thus, to establish standing under Article III, a plaintiff must show (i) an "injury in fact," (ii) a "causal connection" between the injury and the challenged conduct, and (iii) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In that way, the doctrine of standing "limits the categories of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1547. A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (internal quotations omitted). Application of that doctrine "ensures that the litigant's interest in the outcome [of a case] continues to exist throughout the life of the lawsuit[.]" *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (citations omitted). That means that there must be an actual controversy between the parties at all stages of the case, not merely at the time the complaint is filed. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk,* 596 U.S. 66, 72 (2013) (internal quotation marks omitted); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477

(1990) (noting that the "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate."). "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. of Trustees of the State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation marks omitted).

Turning first to Count 2 of the Complaint, it is undisputed that approximately three weeks after Jennifer commenced this action, the Debtor satisfied the Maintenance Claim in full. *See* Debtor's Decl. ¶ 7.[3] "A controversy ceases to exist, and the claim in question becomes moot, if 'events outrun the controversy' so that the court "can grant no meaningful relief.'" *Day v. Klinger (In re Klinger)*, 301 B.R. 519, 523-24 (Bankr. N.D. Ill. 2003) (quoting *McBryde v. Comm. to Review Circuit Council Conduct,* 264 F.3d 52, 55 (D.C. Cir. 2001)). That is what has occurred here. Although Jennifer had standing to challenge the dischargeability of the Maintenance Claim when she filed the Complaint, that claim for relief is now moot, because the indebtedness has been paid in full. For that reason, the Court dismisses Count 2 for lack of subject matter jurisdiction. *See, e.g.*, *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 931 (S.D.N.Y. 1995) (noting that if debt underlying fraudulent conveyance claim had been extinguished by settlement and rendered moot, court would not have subject matter jurisdiction over action); *Tenn. Dep't of Corr. v. Farnsworth (In re Farnsworth)*, 283 B.R. 503, 512 (Bankr. W.D. Tenn. 2002) (stating, in context of a motion for judgment on the pleadings in non-dischargeability adversary proceeding under 11 U.S.C. §§ 523(a)(7) and (a)(17) of certain debts arising from debtor's prepetition fines and debts, that

---

[3] As noted previously, in Count 2 of the Complaint, Jennifer alleges that the Maintenance Claim totals $216,000. However, by order dated May 31, 2018, the State Court fixed the amount of the Maintenance Claim at $168,000, and ordered the Debtor to pay that sum to Jennifer. *See* Debtor's Decl. ¶ 6; Ex. A. Jennifer's counsel has confirmed that on June 26, 2018, the Debtor paid the Maintenance Claim in full. *See id.* ¶ 7; Ex. B.

"[t]he apparent payment of this fine renders the issue of nondischargeability moot because this debt has been extinguished (i.e., paid).").

The Debtor contends that Count 1 likewise should be dismissed for lack of subject matter jurisdiction, albeit for a different reason. Jennifer is a creditor on account of her contingent, unliquidated Equitable Distribution Claim. *See* 11 U.S.C. § 101(5)(A) (defining the term "claim" to include rights to payment that are "contingent," "unmatured," and "unliquidated"). *See, e.g.*, *In re Drexel Burnham Lambert Grp.*, 151 B.R. 674, 684 (Bankr. S.D.N.Y. 1993 (finding that claimant with a possible right of payment under an unconditional guaranty agreement is a known contingent creditor entitled to actual notice of the debtor's bar date). The Debtor contends that once the State Court liquidates that claim, the indebtedness will be excepted from discharge under section 523(a)(15) of the Bankruptcy Code. Jennifer does not challenge that assertion and, in any event, the plain language of the statute[4] and case law interpreting it, confirms as much. *See, e.g.*, *Gilman v. Golio (In re Golio)*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008) ("With respect to non-domestic support obligations, such as awards relating to equitable distribution, 11 U.S.C. § 523(a)(15) now provides that a discharge under the Bankruptcy Code does not discharge an individual debtor from any [such] debt . . . "); *In re Clouse*, 446 B.R. 690, 707 n.58 (Bankr. E.D. Pa. 2010) ("The dischargeability of domestic support obligations and of equitable distribution is separately established in Sections 523(a)(5)

---

[4]    Section 523(a)(15) of the Bankruptcy Code provides that a discharge under the Bankruptcy Code does not discharge an individual debtor from any debt—

> to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

and (a)(15) . . . "); *In re St. Clair*, No. 08-27884, 2011 WL 6888369, at *2 (Bankr. D.N.J. Dec. 29, 2011) ("In a chapter 7 proceeding, an equitable distribution obligation is excepted from discharge under 11 U.S.C. § 523(a)(15)."). The Debtor contends that since the Equitable Distribution Claim is non-dischargeable, Jennifer lacks standing to object to his discharge in bankruptcy under section 727(a) of the Bankruptcy Code because (i) she cannot get more relief from this Court against the Debtor with respect to that claim than that to which she is already entitled; and (ii) she cannot prosecute this adversary proceeding for the benefit of other creditors. *See* Motion ¶ 13; Reply ¶ 7.

      The Court agrees. When a debtor is granted a discharge in bankruptcy, the "injury" to a creditor holding a dischargeable claim is that it is barred from seeking payment of that indebtedness from the debtor. *See* 11 U.S.C. § 524(a)(2) ("A discharge in case under this title. . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."); *see also In re Covelli*, 550 B.R. 256, 270 (Bankr. S.D.N.Y. 2016) ("The discharge order speaks for itself: it bars [creditor] from pursuing any prepetition contract claim for damages against the Debtors."). In an effort to avoid that injury, a creditor can object to the debtor's discharge under section 727(a) of the Bankruptcy Code. If it is successful, the creditor will obtain something it would not otherwise have without that litigation – "a post-petition claim against the debtor and his present and future assets." *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1452 (11th Cir. 1994) (discussing effect of denial of discharge under § 727(a)). A creditor like Jennifer, who holds only a non-dischargeable claim against the Debtor, is not similarly situated. She will neither suffer an injury if the Debtor receives his bankruptcy discharge, nor realize a benefit if he is

9

denied his discharge. She will not be injured if the Debtor receives a discharge in bankruptcy because she will be free to seek payment of that claim from him. *See Mapley v. Mapley (In re Mapley)*, 437 B.R. 225, 228 (Bankr. E.D. Mich. 2010) (noting that creditor holding a non-dischargeable claim is not injured if the debtor obtains a bankruptcy discharge because "none of the debt in question will be discharged even if the Debtor obtains a discharge in his Chapter 7 case.") (footnote omitted). Jennifer will not realize a benefit if she prevails in the litigation because she will be left with what she already has – a non-dischargeable claim against the Debtor. *See, e.g.*, *Matthers v. Matthers (In re Matthers),* No. 10-11553, 2011 WL 1789981, at *2 (Bankr. N.D. Ga. March 23, 2011) (finding that plaintiff lacks standing to object to debtor's discharge under section 727 where plaintiff's complaint fails to assert a claim against the debtor that would not already be non-dischargeable under sections 523(a)(5) or (a)(15)). Because Jennifer cannot demonstrate that she will suffer an injury that can be redressed if the Debtor's discharge is denied under section 727(a) of the Bankruptcy Code, she lacks standing to bring the claims against the Debtor in Count 1 of the Complaint. *See Zirogiannis v. Seterus, Inc.*, 707 Fed. Appx. 724, 726 (2d Cir. 2017) ("To establish standing under Article III of the Constitution, a plaintiff must show that he suffered an 'injury in fact,' a 'causal connection' between the injury and the challenged conduct, and a likelihood [as opposed to merely speculative] that the injury will be 'redressed by a favorable decision.'") (quotation omitted).

The case of *In re Klingler* is instructive. There, a creditor ("Day") filed an adversary proceeding (the "First Adversary") in the debtor's ("Klinger") bankruptcy case, seeking a determination that the prepetition loan he made to Klingler was non-dischargeable under section 523(a) of the Bankruptcy Code. *Day v. Klinger (In re Klinger)*, 301 B.R. 519, 522 (Bankr. N.D. Ill. 2003). While that litigation was pending, the chapter 7 trustee filed a no-asset report in the

10

case, Klingler received his bankruptcy discharge, and his case was closed. *See id.* Months later, while the First Adversary was pending, Day reopened the chapter 7 case and commenced an adversary proceeding (the "Second Adversary"), seeking an order revoking Klingler's discharge on the grounds that he had failed to disclose all his assets. *See id.* In the First Adversary, the bankruptcy court rendered a final judgment in favor of Day, holding that his claim against Klingler was a non-dischargeable debt under section 523(a)(2)(A). *See id.* at 523. A month later, in the Second Adversary, Klingler and Day filed cross-motions for summary judgment. *See id.* The bankruptcy court declined to address the motions and, instead, dismissed the Second Adversary for lack of subject matter jurisdiction. In so doing, the *Klingler* court explained that to satisfy the constitutional requirement for a case or controversy, the dispute between the parties must be "actual" and "live." *Id.* (citations omitted). It noted that if at some point in the course of litigation the controversy ceases to exist, such that the court "can grant no meaningful relief," the matter will be rendered moot. *Id.* at 524. The court found that because it had rendered a final judgment in the First Adversary that Day's claim was non-dischargeable, the Second Adversary was moot. It reasoned that "Day received all the relief to which he was entitled for the injury he claimed. . . . There is no further relief the court can grant him." *Id.* The court also found that once it determined that Day's claim was non-dischargeable, Day lost standing to pursue the Second Adversary. It reasoned that Day no longer had an injury in fact that was distinct and palpable since "the only injury that conferred standing—the prospect that Klingler's debt to him would be discharged and so could never be collected—was redressed." *See id.* at 524, n.8.

In *In re Mapley*, the court applied the *Klinger* rationale in a case like this one, where the plaintiff challenging the debtor's discharge in bankruptcy held a non-dischargeable claim under sections 523(a)(5) and (a)(15) of the Bankruptcy Code. *See Mapley v. Mapley (In re Mapley)*,

11

437 B.R. 225, 227 (Bankr. E.D. Mich. 2010). There, the chapter 7 debtor's wife ("Gloria"), whose claim against her husband was solely on account of unpaid domestic support obligations, sued under section 727(a) of the Bankruptcy Code to deny her husband his bankruptcy discharge. *Id.* at 226. In her adversary proceeding, Gloria did not object to the dischargeability of her domestic support claim. The bankruptcy court, *sua sponte*, issued an order directing her to show cause why the adversary proceeding should not be dismissed for lack of subject matter jurisdiction. *See id.* In analyzing that issue, the *Mapley* court found that because Gloria's only claim against her husband was non-dischargeable under sections 523(a)(5) and (a)(15) of the Bankruptcy Code, she lacked standing to bring suit under section 727(a) of the Bankruptcy Code. It reasoned that the relief she was seeking in the adversary proceeding under section 727 "would give her nothing she does not already have – what she has is a claim against the Debtor that will not be discharged in the Debtor's Chapter 7 case." *Id.* The court also found that she "does not have standing to object to the Debtor's discharge solely on behalf of other creditors." *Id.* at 229. Accordingly, the court dismissed the complaint.[5]

The rationale of the *Klinger* and *Mapley* courts in dismissing the subject complaints is readily applicable here and Jennifer does not contend otherwise. Instead, in opposition to the Motion, Jennifer cites to *Sherwin Williams Co. v. Grasso (In re Grasso)*, 497 B.R. 434 (Bankr.

---

[5] In reaching that determination, the *Mapley* court also relied on *Neal v. Neal (In re Neal)*, 302 B.R. 275, 278 (8th Cir. BAP 2003). In that case, the chapter 13 debtor's former wife ("Connie") appealed the bankruptcy court's order of discharge (the "Discharge Order") entered in the case in conjunction with the confirmation of the debtor's chapter 13 plan. *Id.* at 278. As of the commencement of that case, the debtor and Connie were parties to divorce proceedings pending in the state court. At that time, and as of the entry of the Discharge Order, the state court had not determined Connie's rights to maintenance payments from the debtor. *See id.* The Discharge Order provided, among other things, that the debtor was discharged from all debts dischargeable under section 1328(a) of the Bankruptcy Code. The found that pursuant to sections 1328(a) and 523(a)(5) of the Bankruptcy Code, once fixed by the state court, the obligation to make maintenance was not dischargeable in bankruptcy. *See id.* at 279. From that, the court reasoned that "the appeal of the [Discharge Order] is of no practical significance to Connie." *Id.* It dismissed the appeal on the grounds that it was moot.

12

E.D. Pa. 2013) in support of the proposition that she has standing to maintain the adversary proceeding as a creditor, even where her claim is contingent and unliquidated. *See* Opposition ¶¶ 6-7. But there is no dispute that a creditor holding a contingent claim has standing to object to the dischargeability of that claim. In *Grasso*, the creditor challenged only the dischargeability of its contingent claim against the debtor under section 523(a) of the Bankruptcy Code. *See id*. at 441-42. It did not object to the debtor's discharge in bankruptcy under section 727(a) of the Bankruptcy Code, which is what Jennifer is doing in Count 1 of the Complaint. Jennifer misplaces her reliance on *Grasso*.

Jennifer lacks standing in her own right to obtain the relief she is seeking in Count 1 of the Complaint, and she cannot obtain that relief for the benefit of others. It is true that the Debtor has creditors that hold dischargeable claims. Although they likely would benefit if Jennifer prevailed on Count 1 of the Complaint, she nonetheless lacks standing to assert the claim because she "may not seek redress for injuries done to others." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972); *see also Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course [in assessing a litigant's standing to sue] the litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."). Here, the case of *Rosenfeld v. Rosenfeld (In re Rosenfeld)*, 558 B.R. 825, 826 (E.D. Mich. 2016), *aff'd*, 698 Fed. Appx. 300 (6th Cir. 2017) is instructive. In that case, the bankruptcy court, *sua sponte*, dismissed the debtor's former husband's ("Joel") complaint objecting to the debtor-wife's ("Amy") discharge under section 727(a) of the Bankruptcy Code, for lack of subject matter jurisdiction. 558 B.R. at 827. In doing so, the bankruptcy court found that all of the claims Joel asserted against Amy were non-dischargeable under sections 523(a)(5) or 523(a)(15) of the Bankruptcy Code, and, as such, Joel lacked standing to sue, because he had

no stake in the litigation.  That is because, even if successful in the litigation, he would realize no benefits beyond what he already had – i.e., a non-dischargeable debt against Amy.  *See id.* at 827-28.  The bankruptcy court also rejected Joel's assertion that he had standing to sue, even without a personal financial stake in the litigation, because an action under section 727 is not merely an action personal to a creditor seeking to redress an individual injury, but rather is punitive in nature and designed to protect the interests of creditors in general.  *See id.* at 828.  On appeal, Joel argued only that his lack of a personal financial stake in the outcome of the adversary proceeding did not foreclose standing to bring the action because denials of discharge under section 727 is not merely remedial, but designed to protect creditors and the integrity of the court's own proceedings.  *See id.* at 828-29.  The district court disagreed and affirmed the bankruptcy court's dismissal for lack of subject matter jurisdiction.  Relying in part on the rationale in *Klingler* and *Mapley*, the district court explained that "an action brought under § 727 is subject to the Article III constraints on jurisdiction . . ." and as such, ". . . Appellant does not have standing to bring such a generalized grievance or to litigate the interests of others[,]" given his lack of personal interest in the outcome of the action.  *Id.* at 829-31.  Jennifer lacks standing to obtain relief against the Debtor under section 727(a) of the Bankruptcy Code.  As such, the Court dismisses Count 1 for lack of subject matter jurisdiction.

## Conclusion

Based on the foregoing, the Debtor's Motion is GRANTED.  The Complaint is dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED.

Dated:  September 25, 2018
       New York, New York                                  */s/ James L. Garrity, Jr.*
                                                                                  Hon. James L. Garrity, Jr.
                                                                                  United States Bankruptcy Judge